IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
\*

vs.   Case No. PX-16-588
\*

FREDERICO BUSTOS-ANDRADE
\*

\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Frederico Bustos-Andrade's ("Bustos") motion to suppress evidence collected pursuant to a warrant issued on November 18, 2016 for prospective cell phone geo-location data,[1] as well as evidence collected during the warrantless stop and search of the vehicle driven by Bustos on November 22, 2016. ECF No. 40. A hearing was held on October 18, 2017 in which the Court heard evidence and oral argument. The Court permitted supplemental letter pleadings which were filed on October 23, 2017. For the following reasons, Bustos' motion is DENIED.

### I. PROCEDURAL HISTORY

Bustos is charged with one count of conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. This charge arises from the delivery of nearly eleven pounds of methamphetamine to the Maryland area. On July 14, 2017, Bustos moved to suppress all evidence, including all evidence obtained pursuant to a search warrant authorizing the government to track a target cell phone and the seizure of the target cell phone itself during a warrantless stop and arrest of Bustos. The Government has opposed the

---

[1] At the motions hearing, the Court ruled orally that sufficient probable cause existed to support the issuance of the challenged warrant, but reserved for further consideration Bustos' separate challenge to the court's power to issue the warrant under Federal Rule of Criminal Procedure 41(b).

1

motion. On November 17, 2017, the Court held an evidentiary hearing and heard argument from the parties.

## II. OPERATIVE FACTS

At the suppression hearing, the following facts were established. In mid-November 2016, a past proven reliable confidential source (CS) informed DEA agent Robert Zachariasiewcz (known to colleagues as Agent Zach) that individuals from Mexico and the Los Angeles area were planning to transport a large quantity of methamphetamine to Maryland. The CS quickly became the middleman between the suppliers on the West Coast and the Maryland recipients. Among the West Coast suppliers was an individual who contacted the CS from a Mexican phone number, and informed the CS that another person using a cell phone with the prefix "951" would call and set up the shipment.

Law enforcement recorded the phone calls and text messages between "951" and the CS. During these conversations, the user of the "951" target cell phone contacted the CS to explain how the methamphetamine shipment would arrive in Bowie, Maryland. The caller explained that another conspirator, "Jose," would fly to Maryland to meet with the CS. Jose would also arrange for the narcotics to be shipped to Maryland, and would personally take possession of the drugs to ensure they reached the CS.

Based on this information, agents applied to United States Magistrate Judge Timothy Sullivan for a warrant pursuant to the Stored Communications Act (SCA), 18 U.S.C. § 2703, to obtain geo-location data so that agents could track the target cell phone. Reciting in substance the above facts, the agents averred that the user of the target cell phone "is the coordinator of the illegal narcotics shipment," and affirmed that "probable cause exists to obtain the precise location data of the **TARGET CELL PHONE**. The requested information will assist law

enforcement with investigating, identifying locating and arresting the individual using the **TARGET CELL PHONE**." Gov't Ex. 1 at 4–5. To gather the requested geo-location data, the warrant sought to direct the cell phone provider, AT&T, to send signals to the "951" number in regular intervals to determine the physical location of the "951" cell phone. The warrant made clear that it "does not authorize the seizure of any tangible property" and that reasonable necessity exists for the seizure of the location information. *Id.*, attachment B.

After Magistrate Judge Sullivan issued the warrant, agents began to track the whereabouts of the target cell phone. The phone was initially located in the Los Angeles area near an Enterprise Rent-A-Car. The target cell phone then moved up the West Coast, ultimately coming to a stop at a Holiday Inn Express Hotel in Portland, Oregon. At the same time, agents kept regular contact with the suspected user of the target cell phone through calls with the CS. The CS also arranged to meet the other co-conspirator, "Jose" near Bowie, Maryland to retrieve the narcotics when the package arrived. Agent Zach led the team conducting the surveillance of the Bowie, Maryland location.

Meanwhile, another set of agents and officers coordinated surveillance of the Portland Holiday Inn Express. Their surveillance began on November 21, 2016, the day before the shipment arrived in Maryland. During this surveillance, DEA Agent David Riley identified a large, newer model black Chevrolet Tahoe whose license plates returned to an Enterprise Rent-A-Car. Riley issued an administrative subpoena to Enterprise, which revealed that the signatory on the rental agreement was "Frederico Bustos." Riley also learned that a Frederico Bustos was staying at the Holiday Inn where the target cell phone was presently located. Riley subsequently followed the Tahoe as it travelled northbound to the Washington State area and then returned to the Holiday Inn. Agents compared the physical travel of the Tahoe to the geo-location data of

3

the target cell phone and further corroborated that the target cell phone was traveling in the Tahoe.  At this point, agents considered the driver of the Tahoe – who they later learned was Bustos – a suspect in the impending drug trafficking transaction, and the phone as containing evidence of the same.

The next morning, agents in Maryland set up surveillance in the area of the planned drug exchange and monitored the ongoing conversations between CS and the target cell phone user, Bustos, leading up to the deal.  The CS arranged with Jose to meet at the Double Tree hotel in Largo, Maryland for the drug exchange.  When the CS arrived and met with Jose, agents observed Jose hand the CS a Federal Express box.  At this point, agents detained Jose and subjected the box to a canine sniff.  The canine alerted to the presence of narcotics.  Agents searched the box, found approximately eleven pounds of methamphetamine inside, and arrested Jose, later determined to be Jose Pena.  Jose Pena was charged with the Defendant.

At the time Pena was arrested, he received an incoming call from Bustos via the target cell phone.  Simultaneously, agents observed Bustos on the phone while Bustos was driving the Tahoe. Pena did not answer.  The Maryland agents immediately directed the CS to place a call to Bustos.  While agents in Maryland observed the CS place that call, agents in Portland, including Agent Riley, also observed Bustos answer the phone and talk with the CS.  Once Agent Riley confirmed with the Maryland agents that the CS was also on the phone, Riley ordered Task Force Officer, Ryan Derry, to execute a traffic stop on the Tahoe.

Although Officer Derry was driving an unmarked vehicle, he activated his "light package" of red and blue flashing lights embedded in the vehicle grill and mounted in the front and rear windshields.  The Tahoe stopped without incident.  Officer Derry approached Bustos on the driver side and asked for his license and registration.  The driver, eventually determined to be

Bustos, was cooperative and calm.  In the front passenger seat was Ms. Ortiz, later determined to be Bustos' wife.  In the rear passenger seats were the couple's three young children and a man with the last name Galvan.

Officer Derry asked Bustos for his driver's license and registration.  Bustos gave Officer Derry some form of ID and informed him that the car was a rental.  Bustos and Ortiz then began to look for the car's rental agreement.  Officer Derry asked Bustos if he would step out of the car, and once he had exited, Officer Derry asked Bustos if he had any weapons and patted him down for officer safety.  They then walked to the rear of the vehicle.  Because it was cold and rainy, Officer Derry raised the hatchback of the Tahoe so that the men could stand under the raised door for cover.  Officer Derry briefly talked with Bustos and asked him for permission to search the vehicle.  Bustos replied, "Go ahead."

Officer Derry began searching the vehicle for the target cellphone while Agent Riley stayed with Bustos.  During the search, Derry had Galvan step out of the car, and eventually Ortiz, but allowed the children to remain inside.  Derry located four cellphones, none of which were the target phone.  Bustos then granted permission for the agents to search his hotel room and returned to the hotel with the agents, but no evidence was recovered from that search.  While the hotel room search was underway, Derry and Ortiz made small talk about being parents and their respective children.  Upon learning that nothing of value was recovered from the hotel, Derry asked Ortiz if he could search the Tahoe again.  Ortiz consented.

Derry then began to search the Tahoe "more thoroughly," including Ortiz's purse, which she had left on the front passenger seat.  In the purse, Derry found a cell phone with the battery removed.  Derry turned this cell phone over to Agent Riley, who confirmed that it was the target cell phone and the search ended.  Bustos was arrested shortly thereafter and charged with

conspiracy to distribute and possession with intent to distribute methamphetamine.

## III. ANALYSIS

### A. The Search Warrant for Geo-location Data

Bustos first challenges the search warrant authorizing the capture of geo-location data on the target cell phone, principally arguing that the warrant is "void ab initio" because it was obtained in violation of Rule 41(b) of the Federal Rules of Criminal Procedure. More specifically, Bustos contends that because Magistrate Judge Sullivan, presiding in Maryland, authorized a warrant to obtain data from Verizon headquarters in Florida, the Judge exceeded his authority to issue a warrant "to search for and seize a person or property located within the district" under Rule 41(b). The Government responds that the warrant validly issued pursuant to 18 U.S.C. § 2703 of the Stored Communications Act. The Government is correct.

Section 2703(a) plainly authorizes a warrant for electronic communications information to the "provider of electronic communication service" when "issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation." 18 U.S.C. § 2703(a). Because the Maryland court maintains "jurisdiction over the offense under investigation," Magistrate Judge Sullivan was authorized to issue the warrant.

Rule 41(b) does not alter this analysis. Although § 2703(a) demands that a warrant issue pursuant to the *procedures* described in the Federal Rules, Rule 41(b) is not a procedural rule. The "common definition of procedure" is "a specific method or course of action." *United States v. Berkos*, 543 F.3d 392, 398 (7th Cir. 2008) (quoting Black's Law Dictionary, 990 (11th ed. 2003)). Rule 41(b), entitled "Authority to Issue a Warrant," does not delineate a method or course of action, but rather sets out the jurisdictional bases for the district court to issue warrants

only where it has jurisdiction over the offense. Accordingly, "Rule 41(b) deals with substantive judicial authority – not procedure –and thus does not apply to § 2703(a)." *Berkos*, 543 F.3d at 398; *see also United States v. Scully*, 108 F. Supp. 3d 59, 75–77 (E.D.N.Y 2015) and *United States v. Kernell*, No. 08-142, 2010 WL 1408437 (E.D. Tenn. Apr. 2, 2010).

Notably, although not essential to this Court's ruling, the statute's legislative history supports this analysis. The SCA was amended in 2001 by the Patriot Act, which "sought to broaden the government's ability to obtain warrants for electronic evidence, not limit it." *Kernell*, 2010 WL 1408437 at *4. The House Committee on the Judiciary's report on the amendment notes that, as amended, § 2703 would allow "the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the ISP [internet service provider] is located." H.R. Rep 107-236, pt. 1, at 57 (2001). The purpose of this amendment was to obviate the need for cumbersome, time consuming, and costly coordination between agencies, prosecutors and judges "which could be devastating to an investigation." *Id.* Accordingly, to read Rule 41(b) as the Defendant suggests would eviscerate the very purpose of the 2001 amendment. Defendant's motion to suppress geo-location data obtained pursuant to the challenged warrant is therefore DENIED.[2]

### B. Warrantless stop and search of the Tahoe

Bustos next challenges the warrantless stop and search of the Tahoe. With regard to the stop of the Tahoe, law enforcement clearly had sufficient probable cause to detain the Tahoe and further investigate Bustos' involvement in the methamphetamine controlled delivery. The CS's communications with Bustos and Pena throughout the controlled delivery, corroborated through

---

[2] At the Suppression Hearing, Bustos alternatively argued, for the first time, that the Court should suppress the contents seized from the cell phone itself. Because the Government obtained a search warrant for the cell-phone itself – the legality of which Bustos has not challenged – the Court finds no independent basis to suppress the cell phone contents.

7

agents' visual observations, and the geo-location data of the phone that Bustos communicated with while driving the Tahoe provided ample cause to stop the vehicle and investigate further.

Bustos does not strenuously challenge the propriety of the initial traffic stop, but rather focuses on whether Bustos and Ortiz validly consented to the search of the vehicle. The Government maintains that not only was consent validly obtained, but that officers independently had probable cause to search the vehicle automobile exception to the warrant requirement. Again, the Government's argument prevails.

First, Bustos does not dispute that he consented to the search of the Tahoe, nor does he assert that he ever withdrew his consent. Rather, Bustos argues that Officer Derry's initial, cursory search of the Tahoe, combined with Bustos' intervening trip with the agents to the hotel, eviscerated Bustos' initial consent. These events, however, do not upset the bedrock principle that "[o]nce a defendant voluntarily gives consent," such consent "is valid until it is withdrawn by the defendant." *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012). Bustos was physically present when agents initially searched his vehicle and did not object to that search. Nor was the second, more careful search, anything more than a continuation of the first, cursory search. *Cf. United States v. Cesares-Cardenas*, 14 F.3d 1283, 1286–87 (8th Cir. 1994).

Second and independently, Ortiz's consent certainly provided the agents with apparent authority to search the vehicle. A third party maintains the authority to consent where she possesses "common authority over or other sufficient relationship . . . to the effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). Where, as here, "the facts available to the officer at the moment," justifies an officer "of reasonable caution in the belief that the consenting party had authority," the validity of the warrantless search will be upheld. *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). The agents reasonably believed that Ortiz

8

possessed authority to consent to the search of the vehicle. Ortiz discussed with the agents her children who were in the vehicle with she and Bustos; they knew her to be Bustos' wife; Ortiz had her purse and luggage in the Tahoe; when Officer Derry asked for the Tahoe's registration documents, both Ortiz and Bustos began to look for the documents in the vehicle; and when Bustos was removed from the vehicle initially, Ortiz was permitted to remain with her children. Under the totality of these circumstances, a reasonably prudent officer would believe Ortiz could likewise consent to search the Tahoe.

Third, even if consent was not validly obtained, sufficient probable cause existed to search the vehicle under the automobile exception to the warrant requirement. *See Carroll v. United* States, 267 U.S. 132 (1925). "If the car is readily mobile and probable cause exists to believe it contains contraband," a warrantless search is justified. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (internal citation and quotation omitted). Ample probable cause to believe the Tahoe contained incriminating evidence (the cell phone) existed at the time the agents executed the stop. Bustos had used the target cell phone to communicate with the CS and Jose prior to and during the controlled delivery of methamphetamine in Maryland. After Jose was arrested, agents also observed Bustos on the phone while driving the Tahoe and simultaneously confirmed that he was speaking to the CS. Agents then stopped the Tahoe and identified the driver as Bustos. Law enforcement, therefore, could reasonably believe that evidence of a crime would be found in the vehicle, namely the cellphone that Bustos used in connection with the methamphetamine delivery. *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996). The fact that a cursory search preceded a more thorough search does not dissipate this probable cause. *See, e.g.*, *United States v. Brookins*, 345 F.3d 231, 234–38 (4th Cir. 2003) (holding that the police's second, more thorough search was valid under automobile exception). In fact, the intervening search of the

hotel room where agents did *not* find the phone actually strengthened the cause to believe the phone was in the car. Finally, because the second search of the Tahoe involved areas not otherwise searched the first time – including Ortiz' purse that she had left on the passenger seat – the first search did not dissipate the probable cause to believe the phone was secreted elsewhere in the car. *Cf. Szathmary v. Town of Elkton,* No. 14-2224-GLR, 2017 WL 1196588, at *7–*8 (D. Md. Mar. 31. 2017). Accordingly, the agents lawfully searched the Tahoe under the automobile exception to the warrant requirement.

**IV. CONCLUSION**

Based on the foregoing reasons, it is this 29th day of December, 2017, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion to Suppress filed by Defendant FREDERICO BUSTOS-ANDRADE (ECF No. 40) BE, and the same hereby IS, DENIED.

2. The Clerk will transmit copies of this Memorandum Opinion and Order to Counsel.

December 29, 2017　　　　　　　　　　　　　　　　　　/S/
Date　　　　　　　　　　　　　　　　　　　　　　　　Paula Xinis
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge